**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**


| | | |
|---|---|---|
| AUTOPORT LLC and CHESTERFIELD MOTOR SPORTS, LLC, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:15-cv-04260-NKL |
| v. | ) ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC., | ) ) ) | |
| Defendant. | ) | |


**ORDER**

Pending before the Court is Plaintiffs' Motion to Remand [Doc. 3]. For the following

reasons, the motion is granted.


**I.      Background**

Plaintiffs, Autoport LLC and Chesterfield Motor Sports, LLC, operate used car

dealerships in St. Louis County, Missouri. In the course of their business, both Plaintiffs have

purchased at least one vehicle manufactured and marketed by Defendant Volkswagen Group of

America. Autoport currently owns a 2012 Volkswagen Jetta TDI that it purchased in July 2015.

Meanwhile, Chesterfield owns a 2010 Volkswagen Jetta TDI that it purchased in November

2014 and a 2012 Volkswagen Jetta TDI it purchased in June 2015.

On September 18, 2015, the United States Environmental Protection Agency announced

that Volkswagen will be required to alter its emissions software for the following Volkswagen

1

vehicles: the 2009 to 2015 Jetta TDI, 2009 to 2015 Jetta Sportswagen TDI, 2010 to 2015 Golf TDI, 2010 to 2015 Audi A3 TDI, 2012 to 2015 Volkswagen Beetle TDI, 2012 to 2015 Volkswagen Beetle Convertible TDI, and the 2012 to 2015 Volkswagen Passat TDI.

According to the Plaintiffs' Complaint, the EPA's notice stemmed from Volkswagen's manipulation of its emissions software so as to deceive customers and regulators. When a vehicle was undergoing testing the software would operate, thus bringing the level of emitting pollutants within federal emissions standards. When a vehicle was being driven, however, the software would deactivate, thus boosting fuel economy and engine power.

Volkswagen therefore marketed the above models—all of which share its TDI series of small diesel engines—as adequately powerful designs that nevertheless would not sacrifice fuel efficiency or environmental performance. Relying on these representations, the Plaintiffs purchased affected Volkswagen vehicles. The Plaintiffs argue that these vehicles have subsequently lost market value because, first, the alterations required by the EPA will reduce engine power and fuel efficiency, and second, because the disclosure of Volkswagen's actions have impeded attempts to resell the vehicles on the market.

The Plaintiffs filed suit against Volkswagen in Missouri state court, alleging one count each of fraudulent misrepresentation and fraud on the market on behalf of a putative class of Missouri dealers. On November 12, 2015, Volkswagen filed a Notice of Removal under 28 U.S.C. § 1441(a) [Doc. 1], and the Plaintiffs filed this Motion to Remand the following day. [Doc. 3].

Thereafter, due to the hundreds of cases filed against Volkswagen stemming from the EPA's September 18th notice, the Judicial Panel on Multidistrict Litigation ordered similar cases against Volkswagen transferred to Judge Charles Breyer in the Northern District of California for

2

pretrial proceedings. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Products Liab. Litig.*, 2015 WL 8543102, at \*2 (U.S. Jud. Pan. Mult. Lit. Dec. 8, 2015). On December 10, 2015, Judge Breyer issued a conditional transfer order under 28 U.S.C. § 1407 for a list of tag-along cases, including this one. The Plaintiffs then filed an objection to Judge Breyer's conditional transfer order. Consequently, the case has not transferred to the Northern District of California, and the Court retains jurisdiction to decide the Motion to Remand. *Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004) (a district court may remand a case after a conditional transfer order is issued so long as the transfer has not become effective).

## II.  Discussion

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), grants subject matter jurisdiction to federal district courts in class actions where (1) any plaintiff has diversity of citizenship from any defendant, (2) the total amount in controversy exceeds $5 million, and (3) the alleged plaintiff class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(2).

When Volkswagen removed this case to federal court under 28 U.S.C. § 1441(a), it argued that these three elements were satisfied. Specifically, on the amount-in-controversy question, it pointed to the Plaintiffs' allegation that there are approximately 6,325 motor vehicle dealers registered in Missouri. Even assuming moderate damages of $2,500 per vehicle, Volkswagen argued, and even assuming "only one-third of those Missouri dealers ever owned a class vehicle," the amount in controversy exceeds the $5 million threshold. [Doc. 1, p. 3]. The Plaintiffs now challenge this reasoning on their Motion to Remand. According to the Plaintiffs, Volkswagen premised its assumptions on a misunderstanding of the putative class: the proposed

class, as stated in the Complaint, consists of all dealers that owned an affected vehicle "as of September 18, 2015," [Doc. 1-1, p. 5, ¶ 22], but Volkswagen's calculation considered any class member that "ever owned" an affected vehicle.

When removing a case under CAFA, a defendant must "establish the amount in controversy by a preponderance of the evidence." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944-45 (8th Cir. 2012). *See also* 28 U.S.C. § 1446(c)(2) ("[R]emoval of the action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified"). Yet this burden is merely "a pleading requirement, not a demand for proof." *Hartis*, 694 F.3d at 945 (*quoting Spivey v. Vertrue, Inc.,* 528 F.3d 982, 986 (7th Cir. 2008)). When a defendant seeks to remove, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).

In a case where the plaintiff challenges the defendant's removal under CAFA, the district court must still determine "by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. In reaching this outcome, "both sides submit proof" and "the district court must make findings of jurisdictional fact." *Id*.

*Dart Cherokee* does not expressly state whether the plaintiff or defendant carries the burden of proof in these situations where the removal is challenged. Several circuits have considered the question since *Dart Cherokee*, and all have concluded that the defendant still carries the burden of proof. *See Statin v. Deutsche Bank Nat. Trust Co.*, 599 F. App'x 545, 547 (5th Cir. 2014) ("After it receives any relevant evidence from both sides, the district court can assess whether the Defendants have met their burden of demonstrating by a preponderance of the

4

evidence that the amount in controversy was satisfied at the time of removal."); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 910-11 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("[Defendant], as the removing defendant, has the burden of proof on this.")[1]

Consequently, the Fifth, Eleventh, and Ninth Circuits have declined after *Dart Cherokee* to shift the burden of proof when a plaintiff challenges the amount in controversy. This approach is consonant with the language of 28 U.S.C. § 1446(c)(2)—upon which *Dart Cherokee*'s holding is based—as well as with the traditional rule that the party seeking federal jurisdiction carries the burden of establishing it.[2] *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) ("Nor did [CAFA] impact the traditional rule that the party attempting to remove bears the burden of establishing subject matter jurisdiction."). *See also Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 821 (8th Cir. 2010) ("Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction.").

In line with this Eighth Circuit precedent and the decisions of other circuits, the Court finds that Volkswagen bears the burden of proof on this Motion to Remand.

---

[1]     Outside of the CAFA context, the Tenth Circuit has also remarked that the defendant bears the burden of proof when its asserted amount in controversy is challenged. *See Duran v. Marathon Asset Mgmt., LP*, 2015 WL 6735628, at *1 (10th Cir. Nov. 4, 2015).

[2]     While *Dart Cherokee* also holds that "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee*, 135 S. Ct. at 554, this does not indicate that CAFA carries a *pro*-removal presumption such that it modifies a defendant's burden of proof. *See id.* (*quoting* S.Rep. No. 109–14, p. 43 (2005)) ("CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court *if properly removed by any defendant*.") (emphasis added).

5

Therefore, the dispositive question before the Court is whether Volkswagen has carried its burden by showing, by a preponderance of the evidence, that the $5 million amount in controversy requirement is satisfied.

When answering this question, a district court should assess the evidence after "both sides submit proof." *Dart Cherokee*, 135 S. Ct. at 554. Yet the *Dart Cherokee* court does not provide a procedure for carrying out this process. See *Ibarra*, 775 F.3d at 1199 ("The Supreme Court did not decide the procedure for each side to submit proof on remand."). Consequently, circuit decisions after *Dart Cherokee* have taken several approaches: the Ninth Circuit, in one case, proceeded by holding oral arguments, *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015), while the Eleventh Circuit has considered paper briefings and affidavits, *Dudley*, 778 F.3d at 912-13. But under any approach, a district court is not required to order evidentiary submissions. *See Sloan v. Soul Circus, Inc.*, 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (citing post-*Dart Cherokee* cases for the proposition that a district court need not request additional briefing from the parties). Rather, the court must merely provide a "fair opportunity" for both sides to submit proof. *Ibarra*, 775 F.3d at 1195. If the court provides that opportunity and one party does not submit any evidence, the Fifth Circuit has found that the court may still evaluate the amount in controversy when the "record is . . . sufficient" to do so. *Statin v. Deutsche Bank Nat. Trust Co.*, 598 F. App'x 322, 323 (5th Cir. 2015).

Volkswagen has had multiple such opportunities to provide evidence, first in its briefings and, second, during a telephone conference held by the Court. During this conference, the Court asked whether the parties wished to schedule an evidentiary hearing or submit additional evidence, and Volkswagen declined to pursue either option. *See* [Doc. 17]. Volkswagen, therefore, has not submitted *any* evidence to support its position. In arguing that the amount in

controversy exceeds $5 million, it has only offered generic assumptions to counter the Plaintiffs'

Motion to Remand.

Even taking Volkswagen's assumptions as "submit[ted] proof" under *Dart Cherokee*,

Volkswagen still has not shown that the amount in controversy exceeds the statutory threshold.

As discussed above, Volkswagen asserts in its Notice of Removal that the amount in controversy

is met because, even if only one-third of the 6,325 motor vehicle dealers in Missouri "ever

owned" an affected vehicle, the Plaintiffs would only need to seek damages of $2,500 per

vehicle to surpass the $5 million threshold. [Doc. 1, p. 3]. Similarly, in its briefing on this

Motion to Remand, Volkswagen continues to estimate that one-third of the 6,325 Missouri

dealers would be part of the plaintiff class.

Yet as the Plaintiffs emphasize, their Complaint alleges a class of "[a]ll motor vehicle

dealers (excluding Volkswagen and Audi franchised dealers) located in Missouri that owned [an

affected vehicle] for sale *as of September 18, 2015*." [Doc. 1-1, p. 5, ¶ 22] (emphasis added).

The Plaintiffs are masters of their claim, *Bell*, 557 F.3d at 956, and so, because they have limited

their proposed class to dealers who owned affected vehicles on the date of the EPA notice,

Volkswagen must operate within this limitation when arguing for federal diversity jurisdiction.

Volkswagen has not done so. In assuming that one-third of Missouri dealers would be part of the

class, Volkswagen has supported this figure only by terming it "a conservative estimate." [Doc.

11, p. 9].

The Plaintiffs, on the other hand, have submitted exhibits indicating that the class size is

significantly smaller. *See* [Docs. 12-1, 12-2, 12-3, 12-4]. These exhibits show that, on

November 12, 2015, there were 218 affected vehicles listed for sale within 250 miles of

Jefferson City, Missouri on one website, Cars.com. On another site, Autotrader.com, 814

7

affected vehicles were listed within a 300 mile radius on that same date. Volkswagen challenges these exhibits as unreliable, given the disparities between the two websites, and inconsistent, considering that the Plaintiffs conducted their search on November 12th instead of September 18th. Yet the Plaintiffs have still provided evidence tending to show that, on a given date, the number of vehicles for sale within an over-inclusive geographic radius fell far short of Volkswagen's assumptions. Crucially, Volkswagen has not countered this argument with any proof of its own.

Volkswagen has had multiple opportunities to demonstrate that the amount in controversy exceeds the jurisdictional threshold. Given that Volkswagen continues to assert damages based on a plainly overbroad reading of the Plaintiffs' alleged class, the Court finds the record sufficient to conclude that Volkswagen has not carried its burden of proof.

Nevertheless, because the Complaint alleges that class members are entitled to punitive damages, Volkswagen argues that the amount in controversy "would clearly be met" if these punitive damages are also considered. [Doc. 11, p. 12]. In this situation as well, Volkswagen maintains that the Plaintiffs bear the burden of proof and that, so long as Volkswagen plausibly alleges the amount in controversy, it does not need to present any evidence. Yet Volkswagen's position does not reflect Eighth Circuit precedent. While the Eighth Circuit has found that punitive damages are included when determining the amount in controversy, *Allison v. Security Benefit Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir. 1992), the party seeking federal jurisdiction still carries the burden of proof and courts will "scrutinize a claim for punitive damages more closely than a claim for actual damages." *State of Mo. ex rel. Pemiscot Cty., Mo. v. W. Sur. Co.*, 51 F.3d 170, 173-74 (8th Cir. 1995).

Moreover, since *Dart Cherokee*, district courts have required evidence when an asserted amount in controversy is challenged—even if the plaintiff claims punitive damages as well. *See, e.g., Byrd v. TVI, Inc.*, 2015 WL 5568454, at *4 (E.D. Mo. Sept. 21, 2015) (questioning the amount in controversy because the defendant had merely pointed to clauses in the plaintiff's petition seeking lost wages, punitive damages, and attorneys' fees; thus "defendant has come forward with no evidence . . . to suggest that these damages might be awarded in this case or that, even if so, they reasonably may exceed the jurisdictional amount.").

Again, Volkswagen has failed to demonstrate, much less plausibly allege, that punitive damages can push the amount in controversy past the statutory threshold when considering the Plaintiffs' proposed class.[3]

## III.    Conclusion

For the foregoing reasons, the Plaintiffs' Motion to Remand [Doc. 3] is granted.

---

[3]    Volkswagen cites to district court cases holding that punitive damage multipliers of 3.98, 6.7, and 8.4 are acceptable, and therefore that the CAFA amount in controversy may be satisfied even where the alleged compensatory damages fall far short of $5 million. Yet these cases are distinguishable because Volkswagen has not carried its burden of establishing any amount of compensatory damages. The Court cannot apply a multiplier if Volkswagen has not provided a reasonable baseline number. *See Johnson v. Sun W. Mortgage Co., Inc.*, 2015 WL 6697261, at *3 (C.D. Cal. Nov. 3, 2015) ("Defendants also argue that attorneys' fees and punitive damages provide further evidence that the $5 million amount in controversy has been satisfied. However, because Defendants have failed to adequately support their assumption that damages are either $4.5 or $5.4 million, they cannot base their attorneys' fees and punitive damages calculations on those damage estimates.").

9

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  January 11, 2016
Jefferson City, Missouri